## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

BRENDA PIMENTAL, and        :
LUIS PIMENTAL,             :
         Plaintiffs,       :
      v.               :    C.A. No. 14-494S
                  :
WELLS FARGO BANK, N.A., and  :
HARMON LAW OFFICES, P.C.,   :
        Defendants.      :

### REPORT AND RECOMMENDATION

Patricia A. Sullivan, United States Magistrate Judge

In this case arising under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, before the Court are the motion of Defendant Wells Fargo Bank, N.A. ("Wells Fargo") to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 13) and the motion of Defendant Harmon Law Offices, P.C. ("Harmon") for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) (ECF No. 14).  Both motions have been referred to me for a report and recommendation.  For the reasons that follow, I recommend that Wells Fargo's motion to dismiss Counts 1 and 2 of the complaint be denied and that Harmon's motion for judgment on the pleadings as to Counts 1 and 2 be granted.[1]

## I.    FACTUAL BACKGROUND[2]

---

[1] Defendants' motion to dismiss the only other claim, Count 3, is granted based on Plaintiff Brenda Pimental's on-the-record agreement voluntarily to dismiss it pursuant to Fed. R. Civ. P. 41(a)(2).  See n.7 *infra*.

[2] Except as otherwise indicated, these facts are drawn from the complaint, which must be accepted as true for purposes of a motion to dismiss.  Erickson v. Pardus, 551 U.S. 89, 94 (2007).  As pertinent to the Harmon motion for judgment on the pleadings, and to the extent that they are not controverted by the Pimentals, these facts are also drawn from the Harmon answer, which includes a copy of the letter whose text is the basis for the claims against it. Santander Consumer USA Inc. v. Walsh, 762 F. Supp. 2d 217, 233 (D. Mass. 2010) (judgment on pleadings is means of disposing of cases when undisputed factual allegations in pleadings reveal absence of viable claim).  In addition, a copy of the mortgage that is referred to in the complaint is supplied by Harmon with its motion (ECF No. 14-3 at 1-15); because its authenticity is not controverted and the mortgage is fairly incorporated by reference in the complaint, its content is considered.  See Freeman v. Town of Hudson, 714 F.3d 29, 36 (1st Cir. 2013); Thompson v. Bank of Am., N.A., CA 13-475-ML, 2013 WL 4807635, at *2 (D.R.I. Sept. 9, 2013).

Prior to 2008, Plaintiffs Brenda and Luis Pimental ("the Pimentals") executed a promissory note, thereby incurring a debt, together with a mortgage secured by their personal residence at 44 Nevada Avenue, East Providence, Rhode Island ("Property"). ECF No. 1 ¶¶ 13-14. The Pimentals failed to pay the underlying debt and defaulted on it and the mortgage. ECF No. 1 ¶ 16. At some point in 2008, after the Pimentals were in default, Wells Fargo, acting through its mortgage loan servicing division under the fictitious name, America's Servicing Company ("ASC"),[3] acquired the right to collect the debt and attempted to collect payments. ECF No. 1 ¶¶ 9-10, 15-16. In late 2008, the Pimentals filed suit[4] against various banks and entities, including ASC, regarding the debt and the mortgage. ECF No. 1 ¶¶ 17-20. In 2012, the parties to that case settled the action and executed a confidential Settlement Agreement and Mutual Release ("Settlement"). ECF No. 1 ¶¶ 21, 26. While the complaint does not describe the content of the confidential Settlement, it does allege that the suit was dismissed on February 21, 2012, after which the Pimentals vacated the Property and "surrendered it to ASC" so that, as of November 2012, the Pimentals no longer owed the debt. ECF No. 1 ¶¶ 23-24, 28. The complaint does not explain what actions were taken in connection with "surrender" of the Property, how the Settlement dealt with the mortgage, including whether it was supposed to have been discharged, or how the Settlement dealt with ownership of the Property, including whether title should have been transferred to ASC.[5]

---

[3] According to the complaint, ASC is the name that Wells Fargo uses for collecting debts secured by mortgages. ECF No. 1 ¶ 9.

[4] This suit was removed to this Court and was captioned Pimental v. Fremont Inv. & Loan, Inc., No. 1:08-cv-00483-M-LDA (D.R.I.).

[5] Confusion regarding the status of the title to the Property is a matter of public record. Harmon's brief draws to this Court's attention Brenda Pimental's 2014 bankruptcy petition, which lists the Property as an asset on Schedule A, stating that "Debtor is uncertain whether title [to the Property] is still in her name." See In re Pimental, No. 1:14-bk-12584 (Bankr. D.R.I. Nov. 24, 2014) (ECF No. 1 at 8).

Despite having surrendered the Property to ASC following the Settlement, in late 2012, the Pimentals "learned ASC believed they still owed the Debt."  ECF No. 1 ¶ 27.  Accordingly, they wrote a letter to ASC and its law firm that "explained ASC was wrongfully still trying to collect the Debt from them."  ECF No. 1 ¶¶ 29-34.  ASC ignored the letter and continued to attempt to collect the debt, sending at least ten letters to the Pimentals.  ECF No. 1 ¶¶ 39, 44. The complaint alleges that ASC's collection letters never disclosed that it was attempting to collect a debt owed to Wells Fargo; at least one of these letters asserted, falsely, that the Pimentals still owed the debt and enclosed a payment coupon directing the Pimentals to mail their payment to ASC.  ECF No. 1 ¶¶ 42-44.  There are no facts stating, suggesting or permitting the inference that any content of any of the letters pertained to the security interest in the Property created by the mortgage or to foreclosure proceedings.  None of the ASC letters is attached to the complaint.

The complaint has only three paragraphs setting out the factual allegations against Harmon.  They allege that, in late October or early November 2014, Harmon sent the Pimentals "letters" asserting that they "still owed the Debt and informing them that Harmon might institute foreclosure proceedings," including that the foreclosure proceedings would be publicized in a newspaper.  ECF No. 1 ¶¶ 45-46.  Notably, the complaint does not assert that Harmon's letters were attempting to collect the debt; the pleading is devoid of any factual allegations to support a claim that Harmon was engaged in debt collection.  Rather, without foundation, it concludes that "Harmon's attempt to collect the Debt, and the threat to publicize the Debt in a newspaper,[6] caused [the Pimentals] severe emotional distress."  ECF No. 1 ¶¶ 45, 49.

---

[6] While not relevant to the facts in issue for purposes of the Pimentals' FDCPA claims, it should be noted that this allegation – that the Harmon letters threatened publicity in a newspaper – is simply wrong.  No such statement appears in the text of the letters attached to Harmon's answer.

As clarified by Harmon's answer and not disputed by the Pimentals, the Harmon "letters" are two identical letters sent at the same time, one addressed to Brenda Pimental and one addressed to Luis Pimental. An undisputedly authentic copy of the latter version is attached to the answer. ECF No. 6-1 at 1-2. Its text may be briefly described: written in a courteous though lawyerly tone, after an introduction advising that Harmon had been engaged by ASC to foreclose on the mortgage based on breach of the conditions of the loan documents, it informs the Pimentals of their contractual and statutory right to avoid foreclosure by reinstating the loan and of their statutory right to dispute the amount of the underlying debt whose non-payment constitutes the breach, while also notifying them that they "are not personally liable for this obligation." ECF No. 6-1 at 1-2. At the foot of the second page of the letters, Harmon added, in all capital letters, the statutory advisory required by 15 U.S.C. § 1692e(11):

> PLEASE BE ADVISED THAT THIS OFFICE IS ATTEMPTING TO COLLECT A DEBT AND THAT ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

ECF No. 6-1 at 2. It is undisputed that these two letters constitute the only communications between the Pimentals and Harmon.

Harmon's answer alleges that it was enforcing the security agreement set out in the mortgage granted by the Pimentals as to the Property and was not attempting to collect the debt; except in the conclusory paragraphs that set out the claims (ECF No. 6 ¶¶ 49, 51, 53, 55), there are no contradictory factual allegations in the complaint. See ECF 1 ¶ 45; ECF No. 6 ¶ 45. Further, while Harmon admits that its business has involved some debt collection, in addition to conducting mortgage foreclosure proceedings, it also alleges that its business with the Pimentals did not involve debt collection. ECF No. 6 ¶ 12. The only materially contested allegation is the Pimentals' asseveration that the Harmon letters falsely asserted that they "still owed the Debt,"

ECF No. 1 ¶ 45, which is belied by the undisputed content of the Harmon letters stating the

opposite:

> You are further notified that since you have been discharged in a Chapter 7
> bankruptcy, <u>you are not personally liable for this obligation,</u> but the Holder may
> proceed to foreclose as described herein if the default is not cured.

ECF No. 6-1 at 1 (emphasis added).  In justifying the foreclosure despite the Settlement, the

Harmon answer explains that, although the Pimentals say that they surrendered the Property to

ASC following the Settlement, in fact the mortgage survived their bankruptcy and no deed or any

other indicia of a transfer or the surrender appears of record.  ECF No. 6 at 5 ¶ C.  This assertion

is not disputed.

## II.    CLAIMS

The complaint alleges that ASC's ten letters and Harmon's two letters violated FDCPA.[7]

Specifically, the Pimentals claim that the letters violate § 1692e, which prohibits the use of false

and misleading representations by a debt collector collecting a debt, and § 1692d, which

prohibits harassment and abuse by a debt collector collecting a debt.  Importantly, the Pimentals

do not claim that either Wells Fargo or Harmon violated § 1692f(6), which is the only provision

of FDCPA applicable to mailed communications by a person "in any business the principal

purpose of which is the enforcement of security interests."  15 U.S.C. § 1692a(6) (limiting

potential FDCPA liability of "debt collector" in business of enforcing security interests to §

---

[7] In Count 3, the complaint also asserts that the receipt of the Wells Fargo and Harmon letters in her home was an actionable invasion of Brenda Pimental's privacy pursuant to R.I. Gen. Laws § 9-1-28.1.  ECF No. 1 ¶¶ 2, 66-71. The viability of this claim is tenuous because the statutory cause of action is limited to an "invasion" that is "offensive or objectionable," R.I. Gen. Laws § 9-1-28.1(a)(1)(i)(B), and no Rhode Island court has ever interpreted the receipt of unwanted mail as an offensive "invasion."  Based on the claim's apparent lack of merit, Harmon (but not Wells Fargo) sought an award of attorney's fees, which are available to a prevailing party pursuant to R.I. Gen. Laws § 9-1-28.1(b).  Based on these concerns, at oral argument, Ms. Pimental, through her attorney, requested that her privacy claims against Wells Fargo and Harmon be voluntarily dismissed, mooting any claim for attorney's fees. Neither defendant objected.  Also withdrawn at oral argument was Harmon's argument that its motion should be treated as unopposed because Pimentals were lackadaisical about timely filing their opposition in that they filed late and did not bother to ask Harmon for an extension.

1692f(6)); see 15 U.S.C. § 1692f(6) (threatening to foreclose is actionable only if there is no present right or intention to take possession of property or property is legally exempt).

## III.    STANDARD OF REVIEW

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the complaint must contain sufficient factual matter, which when accepted as true, states a claim for relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 677-78 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint should be dismissed.  SEC v. Tambone, 597 F.3d 436, 442 (1st. Cir. 2010) (en banc).  While plausibility is not akin to probability, it asks for more than a sheer possibility that a defendant has acted unlawfully.  Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).  That is, the plaintiff must allege facts supporting "each material element necessary to sustain recovery under some actionable legal theory."  Campagna v. Mass. Dep't of Envtl. Prot., 334 F.3d 150, 155 (1st Cir. 2003) (citations omitted).  The performance of the plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." A.G. ex rel. Maddox v. v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013) (quoting Iqbal, 556 U.S. at 679).

In contrast to a Fed. R. Civ. P. 12(b)(6) motion, which is laser-focused on the legal adequacy of the complaint, a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) examines the undisputed factual record expanded by the defendant's answer to determine the merits of the claims as revealed in the formal pleadings.  Pollard v. Law Office of Mandy L. Spaulding, 967 F. Supp. 2d 470, 474 (D. Mass. 2013) aff'd, 766 F.3d 98 (1st Cir. 2014);

Santander Consumer USA Inc. v. Walsh, 762 F. Supp. 2d 217, 233 (D. Mass. 2010).  A Fed. R.

Civ. P. 12(c) motion, unlike a Fed. R. Civ. P. 12(b)(6) motion, "implicates the pleadings as a

whole."  Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 54-55 (1st Cir. 2006).  Otherwise, "[a]

Rule 12(c) motion 'is treated much like a Rule 12(b)(6) motion to dismiss.'"  Walsh, 762 F.

Supp. 2d at 233 (quoting Perez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 29 (1st Cir. 2008)).

Because the Fed. R. Civ. P. 12(c) "motion calls for an assessment of the merits of the case at an

embryonic stage, the court must view the facts contained in the pleadings in the light most

favorable to the nonmovant and draw all reasonable inferences therefrom" in the nonmovant's

behalf.  R.G. Fin. Corp. v. Vergara-Nunez, 446 F.3d 178, 182 (1st Cir. 2006).  To survive a

motion for judgment on the pleadings, a complaint must contain factual allegations that "raise a

right to relief above the speculative level, on the assumption that all the allegations in the

complaint are true."  Perez-Acevedo, 520 F.3d at 29 (citing Twombly, 550 U.S. at 555).

    In considering a motion under either Fed. R. Civ. P. 12(b)(6) or 12(c), the court generally

may not consider matters outside the pleadings without converting the motion to one for

summary judgment.  Fed. R. Civ. P. 12(d).  However, there are well recognized exceptions to

this principle.  Thus, the court may consider the implications from documents attached to or

fairly incorporated by reference into the complaint whose authenticity is not disputed, documents

from the public record that are susceptible to judicial notice, and concessions in the opposing

party's response to the motion.  Freeman v. Town of Hudson, 714 F.3d 29, 36 (1st Cir. 2013);

Thompson v. Bank of Am., N.A., CA 13-475-ML, 2013 WL 4807635, at *2 (D.R.I. Sept. 9,

2013).  For a motion for judgment on the pleadings, the documents attached to the answer may

be considered if their authenticity is not in issue.  Curran v. Cousins, 509 F.3d 36, 44 (1st Cir.

2007).  For example, in a case with claims arising from a mortgage, it is generally accepted that

"the Court . . . can take judicial notice of . . . the underlying mortgage documents." <u>Chestnut v.</u>
<u>Wells Fargo Bank, N.A.</u>, No. 10-CV-4244, 2011 WL 838914, at *1, n.1 (E.D.N.Y. Mar. 2,
2011).  Moreover, when the complaint adverts to specific written instruments but does not attach
them, the court may credit the actual terms of the instruments and reject the plaintiff's
inconsistent conclusory characterization of them in granting a motion to dismiss.  See <u>Young v.</u>
<u>Wells Fargo Bank, N.A.</u>, 717 F.3d 224, 232-33 (1st Cir. 2013); <u>Henning v. Wachovia Mortg.,</u>
<u>FSB</u>, 969 F. Supp. 2d 135, 147 (D. Mass. 2013) (citing <u>Clorox Co. P.R. v. Proctor & Gamble</u>
<u>Commercial Co.</u>, 228 F.3d 24, 32 (1st Cir. 2000)).

## IV.   FAIR DEBT COLLECTION PRACTICES ACT

FDCPA was adopted in 1977 to protect consumers from "abusive, deceptive, and unfair
debt collection practices." 15 U.S.C. § 1692(a); Pub. L. No. 95-109, 91 Stat. 874.  Among its
enforcement tools, Congress created "a private cause of action for victims of oppressive or
offensive collection agency behavior." <u>Chiang v. Verizon New Eng. Inc.</u>, 595 F.3d 26, 41 (1st
Cir. 2010).  FDCPA prohibits harassment or abuse, false or misleading representations and unfair
practices by "debt collectors." 15 U.S.C. §§ 1692d–1692f.  As pertinent to the two FDCPA
claims in this complaint, § 1692e makes actionable false and misleading representations by a
debt collector while § 1692d creates a cause of action for harassment and abuse by a debt
collector.

To avoid inadvertently engaging in the false and misleading conduct prohibited by §
1692e, a debt collector is affirmatively required by § 1692e(11) to include in its initial written
communication with the consumer the advisory that "the debt collector is attempting to collect a
debt and that any information obtained will be used for that purpose;" it is also required to self-
identify as a debt collector in subsequent written communications. 15 U.S.C. § 1692e(11); <u>see</u>

Carroll v. Wolpoff & Abramson, 53 F.3d 626, 627 (4th Cir. 1995) ("debt collection notification

must be included in *all* correspondence").  The inclusion of this advisory in written

correspondence related to a debt does not alter the legal status of the communication under

FDCPA from something else to debt collection.  Laccinole v. Twin Oaks Software Dev., Inc.,

No. CA 13-716 ML, 2014 WL 2440400, at *10 (D.R.I. May 30, 2014), aff'd, No. 14-1705, slip.

op. at 1 (1st Cir. Apr. 27, 2015) (inclusion of collection disclaimer appropriate in light of

unsettled FDCPA law and does not convert loan servicing into debt collection; self-identification

argument rejected).  For example, in Newman v. Trott & Trott, P.C., the court held that, where

the primary duty of the law firm was to enforce its client's security interest, the inclusion of the §

1692e(11) advisory on its letters did not convert the firm into a debt collector for purposes of

other prohibitions of FDCPA.  889 F. Supp. 2d 948, 959-61 (E.D. Mich. 2012); see Natividad v.

Wells Fargo, N.A., No. 3:12-cv-03646 JSC, 2013 WL 2299601, at *9 (N.D. Cal. May 24, 2013)

(statutory debt collector advisory in notice of default required for foreclosure reflects

inconsistency in case law regarding FDCPA and does not convert mortgage foreclosure into debt

collection).  Rather, the inclusion of this advisory is a well-accepted solution to the Hobson's

choice posed by FDCPA.  Fouché v. Shapiro & Massey L.L.P., 575 F. Supp. 2d 776, 788 & n.6

(S.D. Miss. 2008) (in communications that do not amount to debt collection, reasonable to "err

on the side of caution" and include FDCPA advisory).

 Another provision of FDCPA that affects the content of communications with consumers

regarding debts is found in 15 U.S.C. § 1692g, which provides a safe harbor for consumers by

making notification of facts about the debt and the right to dispute it mandatory.  Riley v.

Portfolio Recovery Assocs., LLC, No. 14 C 9819, 2015 WL 1594298, at *2 (N.D. Ill. Apr. 7,

2015).  Section 1692g requires a debt collector to advise the consumer of the amount of the debt,

the name of the creditor and the consumer's right to dispute the amount within thirty days of the notice.  15 U.S.C. § 1692g(a).  If the consumer exercises his right to dispute, all collection efforts must cease until the amount of the debt and the identity of the creditor have been verified.  15 U.S.C. § 1692g(a)-(b).  Section 1692g contains specific language that must be included either in the initial communication with the consumer or in a communication sent within five days after the initial communication; to establish an actionable failure to comply with § 1692g requires no showing of intent; strict liability is imposed for failure to include the required notice.  Dragon v. I.C. Sys., Inc., 483 F. Supp. 2d 198, 204 (D. Conn. 2007).

The critical definition of who is a "debt collector" is set out in 15 U.S.C. § 1692a(6).  This definition specifically limits the applicability of certain of the prohibitions in §§ 1692d to 1692f, providing that a person who uses the mail in connection with "any business the principal purpose of which is the enforcement of security interests" is a "debt collector" only for purposes of § 1692f(6).  Section 1692f(6) gives rise to an FDCPA cause of action only if the debt collector threatens "to take any nonjudicial action to effect dispossession or disablement of property" subject to a security interest and either the property is legally exempt or there is no present right or intent to take possession of it.  15 U.S.C. § 1692f(6); Derisme v. Hunt Leibert Jacobson P.C., 880 F. Supp. 2d 339, 362-63 (D. Conn. 2012) (enforcer of a security interest is only subject to § 1692f(6) and not to any other prohibitions of FDCPA, collecting cases).  Thus, a mailed communication by a person whose business the principle purpose of which is the foreclosure of a mortgage cannot give rise to a cause of action under either § 1692e for false and misleading representations by a debt collector or under § 1692d for harassment and abuse by a debt collector.  See Enriquez v. Red Rock Fin. Servs., LLC, No. 2:14-CV-02118-GMN, 2015 WL 1186570, at *3-4 (D. Nev. Mar. 16, 2015) (dismissing claim that initiation of foreclosure

constitutes harassing and abusive debt collection); Speleos v. BAC Home Loans Servicing, L.P., 824 F. Supp. 2d 226, 233 (D. Mass. 2011) (liability of entity not collecting a debt but rather enforcing a security interest limited to § 1692f(6)).

Some courts have drawn a distinction between communications intended solely to initiate nonjudicial foreclosure to enforce the mortgagee's security interest, and those that also seek a personal judgment against the debtor for a deficiency, which would plainly amount to debt collection.[8]  See Derisme, 880 F. Supp. 2d at 364; Rousseau v. Bank of N.Y., No. 08-cv-00205-PAB, 2009 WL 3162153, at *8 (D. Colo. Sept. 29, 2009).  Based on this distinction, many courts have concluded that "in contrast to a foreclosure that is only against the property, where there is some attempt to collect money in addition to the enforcement of a security interest, an FDCPA claim will lie, at least for the conduct related to the money collection."  Overton v. Foutty & Foutty, LLP, No. 1:07–cv–0274–DFH, 2007 WL 2413026, at *6 (S.D. Ind. Aug. 21, 2007) (if person invokes judicial remedies only to enforce security interest in property, effort is not subject to FDCPA except for § 1692f(6) and § 1692i(a)); McDaniel v. South & Assocs., P.C., 325 F. Supp. 2d 1210, 1217 (D. Kan. 2004) (communication regarding judicial foreclosure proceeding that also sought personal judgment against debtor subject to all prohibitions of FDCPA and not just § 1692f(6)).  Put differently, a foreclosing entity that goes beyond what is needed to foreclose may find itself engaged in debt collection so as to subject itself to liability under other

---

[8] An esoteric debate that need not be resolved by this Court today is whether foreclosure of a security interest amounts to FDCPA debt collection.  Speleos v. BAC Home Loans Servicing, L.P., 824 F. Supp. 2d 226, 232 (D. Mass. 2011) (courts disagree over how FDCPA applies to foreclosure).  Some courts have held that it does not. O'Connor v. JP Morgan Chase, No. 4:14-CV-00178-KAW, 2014 WL 2216011, at *8 (N.D. Cal. May 29, 2014) (foreclosing on property does not constitute debt collection under FDCPA); Natividad v. Wells Fargo Bank, N.A., No. 3:12-cv-03646 JSC, 2013 WL 2299601, at *6 (N.D. Cal. May 24, 2013) (for purposes of FDCPA, "debt collector" does not include one engaged in mere enforcement of security interests).  Others, while acknowledging the limits on the applicability of FDCPA to mortgage servicing, hold that there is no per se rule classifying correspondence in connection with foreclosure as exempt from the duties imposed on debt collectors if there is also an attempt to collect the underlying debt.  See, e.g., Glazer v. Chase Home Fin., L.L.C., 704 F.3d 453, 461-62 (6th Cir. 2013); Birster v. Am. Home Mort. Servicing, Inc., 481 F. App'x 579, 581-83 (11th Cir. 2012) (per curiam); Wilson v. Draper & Goldberg, P.L.L.C., 443 F.3d 373, 376 (4th Cir. 2006).

FDCPA prohibitions.  See Birster v. Am. Home Mortg. Servicing, Inc., 481 F. App'x 579, 581-83 (11th Cir. 2012) (per curiam) (mortgage servicer that ignored request to communicate with attorney and made daily calls and harassing visits to debtor with brain tumor for the purpose of collecting debt may be subject liability as debt collector); Speleos, 824 F. Supp. 2d at 233 ("foreclosing entity that goes beyond what is needed to foreclose may engage in debt collection and thus subject itself to liability under other provisions"); Pettway v. Harmon Law Offices, P.C., No. 03-CV-10932, 2005 WL 2365331, at *5 (D. Mass. Sept. 27, 2005) ("law firm whose foreclosure activities are beyond reproach might nonetheless be liable under the FDCPA for related but less salubrious efforts to squeeze a debtor into coughing up the underlying debt").

The other FDCPA exemption at issue in this case is the one that shields a creditor collecting its own debt in its own name; as long as it is does so without subterfuge, it enjoys an exemption from the definition of debt collector under FDCPA.  15 U.S.C. § 1692a(6)(F)(ii). However, this exemption is lost when the creditor opts to collect under a different name, "which would indicate that a third person is collecting or attempting to collect such debts."  15 U.S.C. § 1692a(6); see Catencamp v. Cendant Timeshare Resort Grp.-Consumer Fin., Inc., 471 F.3d 780, 782 (7th Cir. 2006) (when creditor deceptively trumpets itself as debt collector under different name, it is subject to obligations imposed on debt collectors by FDCPA).  The perception of the consumer controls whether the exemption is available.  If the creditor's use of another name causes the consumer to believe that a third party has taken over collecting the debt, the activities engaged in under that name are subject to the provisions of FDCPA, which police the conduct of debt collectors.  Vincent v. The Money Store, 736 F.3d 88, 90-91, 96-105 (2d Cir. 2013) (if law firm hired to collect debt for creditor falsely represents to consumer that it is collecting the debt for itself, FDCPA exemption for creditor collecting its own debts does not apply).

12

To determine how to characterize or interpret a specific written communication under FDCPA, this Circuit applies the rule that it must be read from the perspective of the hypothetical unsophisticated consumer.  Pollard v. Law Office of Mandy L. Spaulding, 766 F.3d 98, 103-04 (1st Cir. 2014).  This standard is intended to protect "all consumers, including the inexperienced, the untrained and the credulous."  Id. at 103.  The standard is an objective one; a debt collector will not be held liable based on an individual consumer's chimerical or farfetched reading of a collection letter.  Id. at 104.  Importantly, in rejecting the "least sophisticated consumer" standard deployed in most circuits, our Circuit sought to avoid any appearance of wedding the standard to the "very last rung on the sophistication ladder."  Id. at 103 n.4 (quoting Gammon v. GC Servs. Ltd. P'ship, 27 F.3d 1254, 1257 (7th Cir. 1994)).

## V.      ANALYSIS

### A.      Wells Fargo's Motion to Dismiss

While Wells Fargo ultimately may prevail for the reasons presented in its motion to dismiss, the one-sided factual allegations in the complaint, which this Court must accept as true when considering a Fed. R. Civ. P. 12(b)(6) motion, are sufficient to state a claim.  In a nutshell, the complaint claims that Wells Fargo/ASC acquired the right to collect the Pimentals' debt after it was in default and that, despite being advised that the debt was not owed, sent the Pimentals a series of letters, using the ASC name without revealing that ASC was Wells Fargo and falsely asserting that the Pimentals owed the debt.  These letters were for the purpose of collecting a debt that the Pimentals did not owe; at least one of them falsely stated that the debt was still owed and included the specific request that the Pimentals use enclosed payment coupons to direct their payments to ASC.  ECF No. 1 ¶¶ 40-44.  By contrast with the complaint's characterization of the Harmon letters as related to foreclosure, ECF No. 1 ¶ 45, nowhere does

the complaint suggest or permit the inference that the ASC communications with the Pimentals were related at all to foreclosure or to some other nonjudicial action to effect dispossession of the Property.

With a complaint alleging that it acted through ASC as an apparent third party, at the pleading phase, Wells Fargo falls outside of the exemption from the definition of an FDCPA debt collector available to a creditor collecting its own debt.  See Vincent, 736 F.3d at 97 (creditor that uses name that causes unsophisticated debtor to believe third party is engaged in collection makes itself a "debt collector" under FDCPA).  Further, its potential exposure is not cabined by 15 U.S.C. § 1692a(6) to the prohibitions imposed on persons using the mails for the principal purpose of enforcement of a security interest – the complaint does not allege that the ASC letters constituted, even in part, an effort to initiate foreclosure proceedings.  See 15 U.S.C. § 1692f(6).  Rather, it claims that Wells Fargo/ASC is in the business of collecting mortgage debts and sent the letters solely and specifically as an attempt to collect a debt that the Pimentals did not owe.  ECF No. 1 ¶¶ 40-42.  Accordingly, Wells Fargo is potentially subject to the prohibitions of 15 U.S.C. § 1692d and § 1692e.  As to § 1692e, the complaint clears the hurdle by the allegation that ASC falsely represented the legal character of the debt by asserting that the Pimentals owed a debt that was not due at the time of that representation.  ECF No. 1 ¶ 40.  And while skimpy, it clears the hurdle as to § 1692d by the allegations that ASC persisted in its debt collection efforts with ten letters after the Pimentals wrote to it and its counsel advising that the debt was not owed, causing the Pimentals "severe emotional distress."  ECF No. 1 ¶¶ 37, 48; see Antkowiak v. TaxMasters, 779 F. Supp. 2d 434, 450 (E.D. Pa. 2011), vacated and remanded on other grounds, 455 F. App'x 156 (3d Cir. 2011) (debt collection letter sent after consumer informed debt collector he would not pay debt was "conduct the natural consequence of which is

to harass, oppress, or abuse"); Graziano v. Harrison, 763 F. Supp. 1269, 1281 (D.N.J. 1991),

rev'd on other grounds, 950 F.2d 107 (3d Cir. 1991) (to violate § 1692d, letters must contain

"language the natural consequence of which is to abuse . . . reader").

Wells Fargo counters that it cannot be liable under FDCPA because debt collection by a

captive mortgage loan servicer like ASC is *per se* exempt from the definition of debt collector

under FDCPA.  15 U.S.C. § 1692a(6)(B); see Montgomery v. Wells Fargo Bank, N.A., 459 F.

App'x 424, 428 n.1 (5th Cir. 2012) (mortgage lenders are not "debt collectors" within the

meaning of FDCPA); Perry v. Stewart Title Co., 756 F.2d 1197, 1208 (5th Cir. 1985) ("The

legislative history of section 1692a(6) indicates conclusively that a debt collector does not

include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as

long as the debt was not in default at the time it was assigned").  In support of this argument,

Wells Fargo points to twenty-three cases[9] decided between 2007 and 2015, in which FDCPA

---

[9] Gipson v. Deutsche Bank Nat'l Trust Co., No. 3:13-CV-4820-L, 2015 WL 2069583, at *1-2 (N.D. Tex. May 4, 2015); McCray v. Fed. Home Loan Mortg. Corp., No. GLR-13-1518, 2014 WL 293535, at *4, 10-11 (D. Md. Jan. 24, 2014); Dietz v. Quality Loan Serv. Corp. of Wash., No. C13-5948 RJB, 2014 WL 29672, at *1-4 (W.D. Wash. Jan. 3, 2014); Jackson v. WMC Mortg. Corp., No. 2:12-cv-02914-JPM-cgc, 2013 WL 5550228, at *1, 8-10 (W.D. Tenn. Oct. 8, 2013); Davis v. Wells Fargo Bank, N.A., 976 F. Supp. 2d 870, 874, 884-85 (S.D. Tex. 2013); Garrett v. BNC Mortg., Inc., 929 F. Supp. 2d 1120, 1123 n.2, 1128 (D. Colo. 2013); Gonzalez v. Wells Fargo Bank, N.A., No. 2:12-cv-00286-DN, 2013 WL 2456397, at *1-3 (D. Utah June 6, 2013); Auriti v. Wells Fargo Bank, N.A., No. 3:12-cv-334, 2013 WL 2417832, at *1, 7 (S.D. Tex. June 3, 2013); In re Rinaldi, No. 11-35689-SVK, 2013 WL 655514, at *1, 15-16 (Bankr. E.D. Wis. Feb. 22, 2013); Gyene v. Stewart Fin., Inc., No. 12-4355, 2013 WL 146191, at *8-9 (C.D. Cal. Jan. 11, 2013); McCann v. U.S. Bank, N.A., 873 F. Supp. 2d 823, 836, 848-49 (E.D. Mich. 2012); Kevelighan v. Trott & Trott, P.C., No. 09-12543, 2011 WL 2111977, at *1-4 (E.D. Mich. May 26, 2011); Robbins v. Mortg. Elec. Registration Sys., Inc., No. 1:09-cv-295, 2009 WL 3757443, at *3, 5 (W.D. Mich. Nov. 9, 2009); Adesokan v. U.S. Bank, N.A., No. 11-cv-01236, 2011 WL 5241178, at *1, 4-5 (E.D. Cal. Oct. 31, 2011); DeFranceschi v. Wells Fargo Bank, N.A., 837 F. Supp. 2d 616, 624 (N.D. Tex. 2011); Famatiga v. Mortg. Elec. Registration Sys., Inc., No. 10-10937, 2011 WL 3320480, at *9-10 (E.D. Mich. Aug. 2, 2011); Fuleihan v. Wells Fargo, No. 2:09-cv-1877, 2010 WL 3724186, at *1, 6 (D. Nev. Sept. 15, 2010); Gruninger v. Am.'s Servicing Co., No. 08-572, 2010 WL 653119, at *1, 4 (E.D. Pa. Feb. 22, 2010); Taggart v. Norwest Mortg., Inc., No. 09-1281, 2010 WL 114946, at *1, 10 (E.D. Pa. Jan. 11, 2010); Derakhshan v. Mortg. Elec. Registration Sys., Inc., No. SACV08-1185, 2009 WL 3346780, at *7 (C.D. Cal. Oct. 13, 2009); Sicairos v. NDEX West, LLC, No. 08cv2014-LAB, 2009 WL 385855, at *1, 3 (S.D. Cal. Feb. 13, 2009); Johnson v. Wells Fargo Home Mortg., Inc., No. 3:05-CV-0321-RAM, 2007 WL 3226153, at *10 (D. Nev. Oct. 29, 2007); Gist v. House Mgmt., Inc., 119 A.D.3d 838, 839 (N.Y. App. Div. 2014).

claims against it have been dismissed despite a fact pattern making clear that the challenged actions were in the course of mortgage servicing by its ASC division.[10]

This argument misses the mark for two reasons.  First, while FDCPA is clear that a mortgage servicer that "obtains" the debt at a time when it was not in default is excluded from the definition of debt collectors by 15 U.S.C. § 1692a(6)(F), this complaint alleges that the Pimentals were already in default when ASC acquired the right to collect their payments.  ECF No. 1 ¶ 16; see Taggart v. Norwest Mortg., Inc., No. 09-1281, 2010 WL 114946, at *10 (E.D. Pa. Jan. 11, 2010) (Wells Fargo, when acting as mortgage servicer, may be debt collector if complaint alleged that debt in default when it was obtained for servicing).  Second, in none of these cases did the court face the claim that the ASC name was used falsely to cause the consumers to believe that the debt was being collected, not by Wells Fargo to which it was owed, but rather by an apparent third party.  Johnson v. Wells Fargo Home Mortg., Inc., No. 3:05-CV-0321-RAM, 2007 WL 3226153, at *10 (D. Nev. Oct. 29, 2007) (if complaint had alleged that Wells Fargo had used ASC name to collect debt so as to indicate that third person was collecting, plaintiff's claim that Wells Fargo is a debt collector would have been viable).  That is what the Pimentals have alleged and that is what this Court must accept as true in considering this motion to dismiss.

Wells Fargo also argues that ASC's communications were in connection with an effort to foreclose, precluding liability under either § 1692e for misrepresentation or § 1692d for harassment.  15 U.S.C. § 1692a(6) (exemption for liability under §§ 1692d and 1692e for

---

[10] Contrary to Wells Fargo's suggestion, these cases do not hold that mortgage servicing companies are categorically exempt from liability under FDCPA.  Rather, to the extent that the issue is addressed, they hold that ASC, as a mortgage servicing company, is exempt if the mortgage was not in default as of the time ASC began servicing. Robbins, 2009 WL 3757443, at *5 ("Contrary to Defendants' suggestions, the authority cited by Defendants does not hold that mortgage servicing companies are categorically exempt from liability under the FDCPA.  It holds that a mortgage servicing company is exempt if the mortgage was not in default at the time that it began servicing the loan."); see, e.g., Famatiga, 2011 WL 3320480, at *9; Taggart, 2010 WL 114946, at *1, 10; Derakhshan, 2009 WL 3346780, at *7.

communication in connection with enforcement of security interest).  Relying on several

opinions from district courts in the Ninth Circuit, it contends that, if foreclosure is a purpose of a

written communication, the communication cannot constitute debt collection no matter what else

it may try to accomplish.  See, e.g., O'Connor v. JP Morgan Chase, No. 4:14-CV-00178-KAW,

2014 WL 2216011, at *8 (N.D. Cal. May 29, 2014); Natividad, 2013 WL 2299601, at *8.  This

interpretation reads too much into these cases.  And if they do so hold, I am disinclined to

conclude that the mere mention of foreclosure automatically displaces the FDCPA prohibitions

on misrepresentation and harassment.  Rather, I would look to the many cases decided

elsewhere, which make clear that "where there is some attempt to collect money in addition to

the enforcement of a security interest, an FDCPA claim will lie, at least for the conduct related to

the money collection." Derisme, 880 F. Supp. 2d at 364; see Birster, 481 F. App'x at 581

(mortgage servicer that ignored request to communicate with attorney and made daily calls and

harassing visits to debtor with brain tumor for the purpose of collecting debt may be subject to

liability as debt collector); Speleos, 824 F. Supp. 2d at 233 ("foreclosing entity that goes beyond

what is needed to foreclose may engage in debt collection and thus subject itself to liability under

other provisions"); Pettway, 2005 WL 2365331, at *5 ("law firm whose foreclosure activities are

beyond reproach might nonetheless be liable under the FDCPA for related but less salubrious

efforts to squeeze a debtor into coughing up the underlying debt"); McDaniel, 325 F. Supp. 2d at

1217 (communication regarding judicial foreclosure proceeding that also sought personal

judgment against debtor is subject to all prohibitions of FDCPA, not just § 1692f(6)).  However,

for this case, there is no need for the Court to struggle to thread this needle.  The complaint

alleges that both ASC and Wells Fargo are in the business of debt collection and that the letters

were intended for debt collection; there is no suggestion that foreclosure has anything to do with

what ASC was trying to accomplish.  Based on the pleading, the FDCPA foreclosure limitation is not applicable.

In sum, the Pimentals' complaint plausibly alleges that ASC, acting as if a third party with no reference to Wells Fargo, acquired the right to collect after the debt was in default and, despite a written notice that the debt was not owed, sent ten or more letters attempting to collect the debt, which falsely stated that the debt was owed and enclosed a payment coupon with directions that the payment be mailed to ASC.  ECF No. 1 ¶¶ 16, 34, 41-44.  It does not allege that any part of the ASC letters amounted to an attempt to foreclose the mortgage.  Based on these plausible allegations, the motion to dismiss Counts 1 and 2 should be denied.

### B.    Harmon's Motion for Judgment on the Pleadings

The allegations in the complaint pertaining to the Harmon letters are very different from those asserted against Wells Fargo.  For starters, the Pimentals concede that the Harmon letters advised them of the possible institution of foreclosure proceedings.  ECF No. 1 ¶ 45.  Further, the complaint against Harmon largely lacks specific facts; it does not allege that Harmon took any steps to collect the debt; it does not assert that the letters stated that the Pimentals were obligated to pay any amount of money or that they must act by any "pay by" date, nor do the letters have a mailing address for sending the payment.  Rather, the complaint contains only the conclusory charge that the Harmon letters "asserted [that they] still owed the Debt."  ECF No. 1 ¶ 45.  The undisputed copy of the text of the letters reveals that this conclusory allegation may be disregarded because it is starkly inconsistent with what the letters actually say: "you are not personally liable for this obligation."  ECF No. 6-1 at 1.  Because the text provides the kind of detailed factual allegation that trumps "an unadorned, the-defendant-unlawfully-harmed-me accusation," Iqbal, 556 U.S. at 678, the Pimentals' allegation that the Harmon letters falsely

stated that they still owed the debt falls away.  See Thompson, 2013 WL 4807635, at *4 (motion

to dismiss granted because contractual terms in documents referenced in complaint inconsistent

with conclusory allegations of breach).

     The Pimentals try to salvage their claim against Harmon by pointing to the hypothetical

unsophisticated consumer, arguing that, through that lens, the letters should be interpreted as

both the initiation of foreclosure proceedings but also as the direct collection of a debt that the

Pimentals did not owe.  To support this argument, they point to cases holding that, under

FDCPA, a debt collector's statement is considered deceptive "when it can be reasonably read to

have two or more different meanings, one of which is inaccurate."  Waters v. Kream, 770 F.

Supp. 2d 434, 436 (D. Mass. 2011) (citing Russell v. Equifax A.R.S., 74 F. 3d 30, 35 (2d Cir.

1996)).  They allege that the portions of the letters advising them of their contractual and

statutory rights to redeem the Property and of their statutory right to dispute the amount of the

debt would lead an unsophisticated consumer to believe Harmon was attempting to collect a debt

from them.[11]  While conceding that a sophisticated consumer would understand that these letters

are merely enforcing a security interest pursuant to the terms of a mortgage, which requires

notification of the outstanding debt, the right to dispute it and the right to avoid foreclosure by

paying it, and acknowledging that the notice that "you are not personally liable for this

obligation" is plain and clear, they nevertheless argue that the language about the underlying

debt would seem to contradict that notice.  Finally, the Pimentals point to the statutory advisory,

---

[11] Before foreclosing, Harmon had to abide by several contractual and statutory predicates, which affected the
content of the Harmon letters.  First, both the contractual terms of the mortgage and Rhode Island law provide the
Pimentals with the right to retain the Property by payment of all sums then due under the mortgage and the note.
ECF No. 14-3 at 11; R.I. Gen. Laws § 34-23-2 (establishing mortgagor's right of redemption by payment of
underlying debt).  Further, FDCPA mandates that the Pimentals retain the right to dispute the amount and validity of
the debt before legal steps may be taken on the assumption that it is in default.  15 U.S.C. § 1692g.  The references
in the Harmon letters to the debt are consistent with these legal obligations: they alert the Pimentals to their right to
avert foreclosure by payment of the debt, they set out the unpaid principal and interest that must be paid to exercise
the right of redemption, and they advise the Pimentals of their right to dispute the validity of all or any of those
amounts, at the same time making plain that they are not personally liable for any of it.  ECF No. 6-1 at 1-2.

which is in all bold type and capital letters at the foot of the letter.  Taken verbatim from 15

U.S.C.§ 1692e(11), it states:

> PLEASE BE ADVISED THAT THIS OFFICE IS ATTEMPTING TO
> COLLECT A DEBT AND THAT ANY INFORMATION OBTAINED WILL BE
> USED FOR THAT PURPOSE.

ECF No. 6-1 at 2.

These arguments fall far short of the goal.  First, to give rise to the level of confusion

necessary to survive a motion for judgment on the pleadings, the Harmon letters must take these

communications out of the realm of "business the principal purpose of which is the enforcement

of security interests."  15 U.S.C. § 1692a(6).  Even if an inaccurate meaning (that the Pimentals

personally owed the debt), as opposed to the closely related accurate fact (that the debt was

unpaid giving rise to the right to foreclose), could be read into them by an unsophisticated

consumer, such a misread does not alter the unambiguous "principal purpose," to initiate

foreclosure.  This is crisp and clear from the first sentence: "[t]his office has been retained by

[ASC] to foreclose on a mortgage."  ECF No. 6-1 at 1.  Second, the Pimentals concede that

Harmon's letters are entirely accurate in that they state what they must to comply with Harmon's

clients' contractual and statutory duties to make the mortgagors aware of their right of

redemption and to dispute the debt, at the same time that they accurately advise the Pimentals

that they are not personally liable for the debt.  Cases addressing this scenario consistently hold

that compliance with the statutory notice requirements imposed on an entity seeking to foreclose

does not convert a foreclosure communication into all-purpose debt collection.  See Newman,

889 F. Supp. 2d at 959-61 (foreclosure letter with notification of rights to redeem and to dispute

debt do not alter purpose of communication that did not seek to collect debt but informed

consumers of initiation of foreclosure); Fouché, 575 F. Supp. 2d at 787 (foreclosure

communication that provides notice of statutory right to cure default and right to dispute amount of debt is not attempt to collect debt but rather attempt to satisfy conditions precedent to foreclosure).  While Madison Avenue Mad Men[12] might have been able to craft prose better able to communicate these inherently complex concepts, what is written is good enough for Bartleby[13] and clear enough even for the ubiquitous unsophisticated consumer.

The only content of the letters that arguably is inconsistent and therefore arguably puts these letters into the category of communications that go beyond foreclosure and seek to collect a debt, Birster, 481 F. App'x at 583; Speleos, 824 F. Supp. 2d at 233; Pettway, 2005 WL 2365331, at *5, is the statutory advisory.  Harmon used the precise language mandated by 15 U.S.C. § 1692e(11) to avoid the liability to which it would otherwise be automatically exposed if its communication were deemed to constitute debt collection subject to the strictures of § 1692e. The Pimentals argue that the footer stating "that this office is attempting to collect a debt" converts this communication into debt collection and Harmon into a debt collector subject to their claims under 15 U.S.C. §§ 1692d, 1692e.

This Court has previously declined to hold that the drafter of a communication referencing debt submits itself to liability as a debt collector just because it complied with § 1692e(11).  Laccinole, 2014 WL 2440400, at *10; see also Birster, 481 F. App'x at 583 (advisory on mortgage foreclosure letter is not competent evidence that mortgage servicer is "debt collector" for purposes of FDCPA); Prickett v. BAC Home Loans, 946 F. Supp. 2d 1236,

---

[12] Madison Avenue "Mad Men" is a phrase coined by the initial episode of "Mad Men," an American period television series that aired from 2007 until 2015 to refer to the men working in advertising on Madison Avenue, New York, New York, during the 1960s.  See, e.g., Roach v. Compass Mfg. Int'l, LLC, No. 4:13-CV-1421, 2014 WL 4185774, at *2 (S.D. Tex. Aug. 21, 2014) (describing show).

[13] Herman Melville, Bartleby, the Scrivener (1853).  Bartleby was a copyist in a successful Wall Street law firm specializing in mortgage instruments among other matters.  In Melville's novella, the turgid prose in the dry instruments he was required to, but preferred not to, copy is one of the factors potentially culminating in his death. See, e.g., Article 6 of Family Court Act C.O'. v. M.McD., 901 N.Y.S.2d 898, at *6 n.8 (N.Y. Fam. Ct. 2009) (describing plot).

1249 (N.D. Ala. 2013) (dismissing FDCPA claim based on wrongful foreclosure because advisory does not *per se* convert communications about foreclosure into debt collection); Newman, 889 F. Supp. 2d at 959-61 (in absence of plausible allegations that lawyers pursuing nonjudicial foreclosure are principally debt collectors, non-section 1692f(6) claims dismissed; advisory does not convert law firm into debt collector); JP Morgan Chase Bank, N.A. v. Horvath, 862 F. Supp. 2d 744, 754-55 (S.D. Ohio 2012) (in absence of allegation that bank was principally in business of debt collection, FDCPA claim based on foreclosure communications dismissed; self-identification as "debt collector" in statutory advisory cannot save claim); Fouché, 575 F. Supp. 2d at 788 n.6 (law firm that wrote foreclosure letter subject only to requirements of §§ 1692f(6) and 1692i(a); allegation that law firm routinely includes advisory is not evidence competent to convert it to debt collector).  This principle was well stated by the court in Chomilo v. Shapiro, Nordmeyer & Zielke, LLP, No. CIV. 06-3103, 2007 WL 2695795, at *6 (D. Minn. Sept. 12, 2007):

> The Court will not penalize [the law firm] for having to make a Hobson's choice in this unsettled area of the law.  [The law firm] was conducting a nonjudicial mortgage foreclosure by advertisement pursuant to Minnesota law.  It was reasonable for [the law firm] to err on the side of caution and include the FDPCA disclaimers in its communication to [plaintiff].

Simply put, the inclusion of the statutory advisory does not convert a foreclosure communication into an attempt to collect a debt nor does the allegation that it was included with the foreclosure notice constitute a plausible fact establishing that the author is a debt collector rather than a person in the "business the principal purpose of which is the enforcement of security interests."

In short, the allegations of the complaint, as supplemented by the undisputed text of the letters, permits only the plausible conclusion that they constituted a communication in a business "the principal purpose of which is the enforcement of security interests." 15 U.S.C. § 1692a(6).

As such, Harmon can be liable only for threatening to foreclose and only if there is no right to

possession or intent to take possession under § 1692f(6).  The Pimentals do not make that charge,

tacitly conceding that ASC had right to foreclose at the time the Harmon letters were written.

The two claims that they do make, under §§ 1692d and 1692e, may not be based on a

communication principally to enforce a security interest.  Accordingly, neither claim is viable

based on the uncontroverted facts in the pleadings.[14]  With no plausible allegation that Harmon's

business is not principally the enforcement of security interests and a communication written for

the sole purpose of initiating foreclosure, I find that Harmon cannot be subject to liability for

more than a violation of 15 U.S.C. § 1692f(6).  Because the complaint does not allege a violation

of § 1692f(6), I recommend that the FDCPA claims (Counts 1 and 2) against it be dismissed.

## VI.   CONCLUSION

For the foregoing reasons, based on Plaintiff Brenda Pimental's request, I recommend

that Count 3 of the complaint be voluntarily dismissed with all parties to bear her or its own fees

and costs pursuant to Fed. R. Civ. P. 41(a)(2).  I further recommend that Defendant Wells Fargo

Bank, N.A.'s Motion to Dismiss (ECF No. 13) Counts 1 and 2 of the complaint be DENIED and

that Defendant Harmon Law Officers, P.C.'s Motion for Judgment on the Pleadings (ECF No.

14) as to Counts 1 and 2 be GRANTED.

---

[14] While it is not necessary to go further in light of the clarity of the conclusion that Harmon may be subject to
FDCPA solely for purposes of § 1692f(6), it bears noting that the claims of misrepresentation and harassment
against Harmon are equally lacking in merit.  The only potential misrepresentation – that the Pimentals owed the
debt – lacks plausibility in the face of the letters' plain statement to the opposite effect.  Further, it is difficult to see
what conceivably is harassing in a pair of letters, effectively a single communication, accurately advising of the
intent to foreclose.  Pollard v. Law Office of Mandy L. Spaulding, 967 F. Supp. 2d 470, 475 (D. Mass. 2013) aff'd,
766 F.3d 98 (1st Cir. 2014) (Section 1692d is not intended to shield recipients of communications regarding debt
from inconvenience and embarrassment that are natural consequence of debt collection; single letter fails to state
claim under § 1692d).  Accordingly, the claims against Harmon for violating 15 U.S.C. §§ 1692d, 1692e should also
be dismissed for failure to state a claim because its letters neither contain any misrepresentation nor constitute
harassment.

Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days after its service on the objecting party.  See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72d.  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision.  See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
September 4, 2015